UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| **In Re:** | ) | **CASE NO: 05-14506-jw** |
| | ) | |
| **Anthony Mercier, Sr.** | ) | **CHAPTER 13** |
| Debtor. | ) | |
| | ) | |
| | ) | |

## AMERICAN GENERAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS BANKRUPTCY PROCEEDING WITH PREJUDICE AND MEMORANDUM OF LAW IN SUPPORT THEREOF AND, ALTERNATIVELY, OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

TO: THE DEBTOR, DEBTOR'S COUNSEL, CHAPTER 13 TRUSTEE:

COMES NOW American General Life Insurance Company, independently and as successor-in-interest to The Old Line Life Insurance Company of America and All American Life Insurance Co.[1] ("American General"), a creditor of Anthony Mercier, Sr. (the "Debtor") and a party-in-interest in this case, and files this Motion To Dismiss Bankruptcy Proceeding with Prejudice and Memorandum of Law in Support Thereof and, Alternatively, Objection to Confirmation of Chapter 13 Plan (the "Motion")[2], and would respectfully show the Court the following:

### I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Objection constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L) and (O) and Local Civil Rule 83.IX.01, DSC. Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] As a result of mergers effective March 31, 2003 and December 31, 2002, respectively, The Old Line Life Insurance Company of America and All American Life Insurance Company merged into American General Life Insurance Company.

[2] The required memorandum of law is incorporated herein.

## II.  PROCEDURAL BACKGROUND

2. The Debtor initiated bankruptcy proceedings by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on October 15, 2005 (the "Petition Date"). The Debtor filed his Schedules A, B, C, D, E, F, G, H, I and J, Summary of Schedules and Statement of Financial Affairs (the "Schedules and Statements") and his Chapter 13 Plan (the "Plan") on October 31, 2005. The deadline to file a proof of claim is February 21, 2006. A Bankruptcy Code § 341 Meeting of Creditors for the Debtor's Chapter 13 case (the "Chapter 13 Creditors Meeting") took place on November 22, 2005. The hearing on confirmation of the plan (the "Hearing on Confirmation") is scheduled for December 29, 2005.

## III.  FACTUAL BACKGROUND

A. Background of Relationship Between Parties and Pending Litigation

3. Anthony Mercier, Sr. was at one time an agent authorized to sell American General life insurance products pursuant to a contract with American General. Anthony Mercier, Sr., in conjunction with Anthony Mercier, Jr. and Charles Mercier, works at and runs Mercier Insurance Agency, Inc., a corporation incorporated under the laws of the State of Georgia. Anthony Mercier, Sr. currently serves as the Chief Executive Officer, Anthony Mercier, Jr. serves as the registered agent and Secretary, and Charles Mercier serves as the Chief Financial Officer.

4. In 2003, American General began an investigation of the life insurance policies on which Debtor was the writing agent. As a result of this investigation, American General discovered that many of the policies sold by the Debtor listed (1) false medical histories, (2) false addresses, (3) fictitious driver's license numbers, (4) false social security numbers, (5) false dates of birth; and/or (6) a false net worth of the putative owners, insureds and applicants. Additionally, the policies or applications often failed to disclose (1) current and prior life

insurance policies held by the putative insureds, (2) that the putative insureds or owners used more than one social security number, and/or (3) that the putative insureds or owners used several aliases.

5. American General also discovered that several putative insureds did not actually apply for the insurance and/or appear for the medical examination. In other words, Debtor knowingly or negligently allowed an imposter to complete the application and/or the medical examination.

6. As a result of Debtor's misconduct, American General issued millions of dollars in life insurance coverage that it otherwise would not have issued or would have only issued on materially different terms. American General contends that Debtor either worked with the applicants and the paramedical examiners to deceive American General by not providing it with truthful information or negligently permitted false and misleading information to be reported to American General. American General has been damaged as a result of Debtor's misconduct.

7. Based on the aforementioned investigation, on April 14, 2005, American General filed its Original Complaint against Debtor alleging claims for breach of contract, breach of fiduciary duty, common law fraud, negligent misrepresentation, conspiracy and violations of the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"). That lawsuit is styled *American General Life Insurance Company v. Anthony Mercier, Sr., Anthony Mercier, Jr., Charles Mercier and Mercier Insurance Agency, Inc.*, Cause No. H-05-1268, in the United States District Court for the Southern District of Texas, Houston Division (the "American General Litigation"). The lawsuit was stayed by the filing of this bankruptcy case, approximately six weeks after the United States District Court for the Southern District of Texas denied the Defendants' Motion to Postpone Discovery, and just as discovery in the case was set to begin.

B.  The Debtor's Schedules and Statements of Financial Affairs

8. Debtor's Schedules reveal ownership of assets totaling $100,302.00. Debtor's most significant asset is his homestead in which he claims a half interest, valued at $62,500.00, which is encumbered to the extent of a $100,000.00 claim. Thirty-seven thousand five hundred dollars of this claim is unsecured. Debtor states in Schedule J that his monthly mortgage payment is $0 and that the debt on his homestead to Countrywide will be paid in its entirety by a codebtor, his ex-spouse.

9. Debtor has listed his secured creditors as follows: i) Bank of America, whose claim totals $15,000.00, ii) Chrysler, whose claim totals $4843.76 and iii) Countrywide, whose claim totals $100,000.00. Debtor's unsecured creditors are i) the Internal Revenue Service, whose priority claim totals $20,000.00,[3] ii) the South Carolina Department of Revenue, whose priority claim totals $2000.00, iii) American Fidelity Assurance Company ("American Fidelity"), whose claim is listed at $84,000.00,[4] iv) Discover, whose claim totals $1000.00, v) the Debtor's pre-petition attorney in the American General Litigation, whose claim totals $1476.91; and vi) American General, whose claim is listed at $100,000.00. Of the total $208,476.91 of unsecured priority and nonpriority claims listed by Debtor, $184,000.00 or 88% of those claims relate to meritorious claims asserted in litigation against Debtor relating to his sale of insurance. As listed, American General's claim comprises almost half of all unsecured claims in Debtor's bankruptcy case. In fact, American General's claim for damages is much more substantial. At

---

[3] The Internal Revenue Service has filed a proof of claim in this matter asserting a claim of $3,181.79 of unsecured debt, and $116,110.00 as a priority unsecured claim, for a total of $119,291.79.

[4] This claim is related to litigation pending in the United States District Court for the District of South Carolina, Aiken Division, styled Civil Action No. 1 05 825 24, *Anthony G. Mercier v. American Fidelity Assurance Company* (the "American Fidelity Litigation") in which American Fidelity has asserted counterclaims against Debtor for recovery of indebtedness for commissions advanced to him on rescinded insurance contracts.

the very least, American General is seeking the return of all commissions paid Debtor in policies identified as fraudulent.[5] To date those commissions alone are in excess of $100,000.00.

C.    The Debtor's Proposed Plan

10.    The Plan states that the Debtor has a total monthly income of $10,000.00 and total expenses of $9298.00 per month, leaving $702.00 of disposable income available for distribution to creditors. The Schedules and Statements disclose that the total monthly income is derived from the Debtor's operation of a business, presumably Mercier Insurance Agency, Inc., or his alleged sole proprietorship.

11.    The Plan proposes to pay $605.00 per month for 57 months to the Trustee, resulting in a total amount of $34,485.00 available to pay creditors. The Plan states that it will pay $300.00 per month to Chrysler and that the debts to Countrywide and Bank of America will be paid directly by codebtors outside of the Plan. The Plan proposes to pay 1% to unsecured creditors.

### IV.    MOTION TO DISMISS BANKRUPTCY PROCEEDING

A.    Petition Filed in Bad Faith

12.    Debtor's Plan is nothing more than an attempt to thwart litigation and avoid the legal obligations that would arise thereunder. Debtor is defending claims in two separate lawsuits brought by insurance companies relating to his wrongful conduct in the sale of insurance. Specifically, the American General lawsuit, seeks economic damages in the amount incurred as a direct result of Debtor's wrongful conduct relating to the issuance of fraudulently

---

[5] As stated fully in the pleadings filed by American General in the American General Litigation, American General seeks recovery for all economic damages incurred as a result of wrongful conduct of the defendants to that action including, but not limited to, commissions paid on fraudulently procured life insurance policies, damages incurred in the issuance of such policies, costs incurred in the investigation of policies issued by the defendants, legal fees incurred in rescinding policies written by defendants, costs related to the risk incurred on fraudulently procured policies not subject to rescission, and recovery of death benefits paid on fraudulently procured policies. American General further seeks exemplary and treble damages.

procured life insurance policies, exemplary damages for breach of fiduciary duty and seeks to treble such damages for violations of 18 U.S.C. § 1964(c). As a fiduciary, Debtor breached the trust of American General. Because the debt to American General resulted from the betrayal of a strong personal trust and criminal conduct, the proposal to obtain a discharge under Chapter 13 amounts to an unfair manipulation of the Bankruptcy Code.

13.   "Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives and the local financial realities." *In re Little Creek Development Co.*, 799 F.2d 1068,1072 (5th Cir. 1986); *see In re Fonke*, 310 B.R. 809, 815-16 (Bankr. S.D. Tex. 2004)("To determine whether a Debtor acted in good faith, courts employ a 'totality of the circumstances' analysis with the determination made on a case-by-case basis"); *In re Aichler*, 182 B.R. 19, 21 (Bankr. S.D. Tex. 1995)(In the context of reviewing a plan under Chapter 13, the court must conduct a "good faith inquiry under Section 1325(a)(3) of the Bankruptcy Code [which] requires a careful examination of the totality of circumstances surrounding the debtor's Chapter 13 filing."). Courts have considered the following non-exclusive list of factors in determining whether a bankruptcy case was filed in bad faith: the percentage of proposed repayment to creditors, the debtor's financial condition; whether the debtor's estate is largely comprised of one asset; the existence of a judgment creditor; the debtor's cash flow; the number of unsecured creditors and the size of their claims; litigation in another forum; the period of time over which creditors will be paid, the amount of the proposed payments; the debtor's earning capacity; types of debt sought to be discharged; frequency with which the debtor has sought relief; sufficiency of financial records produced by the Debtor; and overall the motivation and sincerity of the debtor. *See Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1134 (4th Cir. 1995); *In re Little Creek,*

799 F.2d at 1072-73; *In re Aichler*, 182 B.R. at 21; *In re Sullivan*, 40 B.R. 914, 918 (Bankr. E.D.N.Y. 1984). When the "totality of circumstance" analysis is applied to this bankruptcy case, the case law and factors enumerated above clearly support dismissal for lack of good faith.

14. Debtor's Plan has not been filed in a good faith attempt to satisfy creditors and reorganize but as a litigation tactic. Debtor is attempting to use the Bankruptcy Code to gain an advantage in disputes being litigated in alternative forums. Further, Debtor's bad faith is abundantly exhibited by i) the lack of meaningful or best efforts to repay creditors in his proposed plan; ii) his filing of a Chapter 13 as opposed to the more applicable Chapter 7 filing knowing that American General's fraud claims will be discharged in bankruptcy; iii) the lack of any evidence that Debtor is in arrears on his current debts; and iv) his overall lack of sincerity to reorganize demonstrated both by filing as a d/b/a when Mercier Insurance Agency, Inc. is in fact a separate legal entity[6] and the lack of clarity and completeness in his Plan and Schedules.[7]

1. <u>Abuse of Bankruptcy Filing as a Litigation Tactic</u>

15. Dismissal of a case is appropriate when it is being used as a litigation tactic which in effect abuses the bankruptcy reorganization process. *See Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 512 (D.S.C. 2000); *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 170 (Bankr. S.D. Tex. 1989). In *Dunes Hotel*, the Fourth Circuit considered a motion to dismiss filed by a judgment creditor that alleged the bankruptcy filing was a litigation tactic. 245 B.R. at 512. The Fourth Circuit held that the Bankruptcy Code does not permit such a use of its provisions. *See id.* citing *In re C-TC 9th Ave. Partnership*, 193 B.R. 650, 654 (Bankr. N.D.N.Y. 1995) ("Where

---

[6] Debtor's Schedule B lists both an interest in Mercier Insurance, a sole proprietorship, and Mercier Insurance Agency, Inc. It is unclear from Debtor's Petition as well as the Plan which of the entities is being referenced by Debtor. However, the address listed by Debtor is that listed with the Georgia Secretary of State as the mailing address and registered office for Mercier Insurance Agency, Inc.

[7] For example, the Plan is completely unclear as to whether the liability on the property at 655 Plum Branch Road belongs to Debtor or Debtor's ex-spouse. While Debtor lists the entire liability of this property on Schedule D, he lists only a half interest in the property as a real property asset on Schedule A.

the primary purpose of the filing of a Chapter 11 case is as a litigation tactic, the petition may be dismissed for lack of good faith."). Specifically, the Court held that the bankruptcy filing was a litigation tactic as Dunes and Hyatt were long involved in a two-party dispute and that Dunes sought to use the avoidance power as a litigation tactic in that dispute. *See Dunes* Hotel, 245 B.R. at 512.

16.   The facts of this bankruptcy case clearly evidence that it was filed by Debtor as a litigation tactic in an attempt to delay and thwart American General as a creditor. This case was filed shortly after the Court denied Debtor's Motion to Postpone Discovery, just before discovery in the American General Litigation was set to proceed. Debtor's Schedules state that his unsecured nonpriority creditor claims total $186,476.91. $184,000.00 of these claims are disputed claims relating to litigation filed by American General and American Fidelity based on claims resulting from Debtor's breach of his contracts with these companies and, in the American General Litigation, Debtor's breach of his fiduciary duty to American General and tortious conduct relating to the sale of fraudulently procured life insurance policies. Debtor's Schedules do not evidence that he has ever been unable to pay his debts. Separating the disputed creditor claims from the undisputed, Debtor's Schedules show that his assets vastly exceed his liabilities. It would be nonsensical for Debtor to assert that this case was filed with an honest intent to reorganize his liabilities of i) $2476.91 of unsecured nonpriority claims; ii) a $22,000 unsecured priority claim by the IRS and iii) the secured debt owned by Chrysler totaling $4843.76 (the only secured debt not listed as being paid by a codebtor). Rather, Debtor is likely paying significant bankruptcy-related attorneys' fees in an attempt to gain a tactical advantage over American General in the American General Litigation, and to delay and thwart American General's attempts to collect from the Debtor on account of his wrong-doings.

2. <u>Bad Faith Exhibited by Attempt to Discharge Debt from Wrongful Conduct with Minimal Payment</u>

17. The Bankruptcy Court for the Middle District of Florida recently noted:

> Although there is nothing, per se, illegal or unlawful for a Debtor to seek refuge in Chapter 13 and try to enjoy the liberal discharge provisions of the Chapter, this may be a red flag and indicate an intent to abuse the provisions, purpose and spirit of the Code, for instance, if the major portion of the claims sought to be discharged arise out of prepetition fraud or wrongful conduct of the Debtor, coupled with a Plan which proposes to pay only minimum payment on these claims, this might warrant the finding of bad faith.

*In re Goodwin*, 328 B.R. 868, 871 (Bankr. M.D. Fla. 2005) (citing *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986)). Specifically,

> "The legal and/or personal relationship between the debtor and the objecting creditor should be considered. If the relationship was a fiduciary one in a legal sense, or involved a substantial degree of personal trust in a factual sense, the causative role of a breach of that trust in the injury to the creditor bears on whether the debtor is in good faith invoking Chapter 13. . . where . . . the sole debt to be adjusted directly resulted from the betrayal of a close personal relationship, the breach of strong personal trust, and felonious conduct in that breach, the proposal to obtain a discharge under Chapter 13 amounts to an unfair manipulation of the Bankruptcy Code."

*In re McLaughlin*, 217 B.R. 772, 777-78 (Bankr. W.D. Tex. 1998) (quoting *In re Sitarz*, 150 B.R. 710, 722-25 (Bankr. D. Minn. 1993)).

18. Courts have also focused on the bad faith that is frequently evident in Chapter 13 cases filed in an effort to discharge debts that would otherwise be non-dischargeable. The Bankruptcy Court for the District of Oklahoma considered a case in which one creditor comprised 100% of the unsecured debt and stated, "The sole and overriding purpose of this Bankruptcy is to discharge an otherwise nondischargeable debt. . ... This motivation and intention to escape nearly all liability of this debt hardly comports with the true 'spirit and purpose of Chapter 13.'" *In re Jacobs*, 102 B.R. 239, 242 (Bankr. E.D. Okla. 1988) (citations omitted).

19. A Debtor's bad faith effort to discharge an otherwise non-dischargeable debt is even more egregious when coupled with a plan that proposes to pay little or nothing to the injured creditor. For example, in the Southern District of Texas Bankruptcy Court opinion of *In re Satterwhite,* the Bankruptcy Court noted that the Debtor's plan proposed a 1% payout on unsecured claims composed essentially of one judgment debt which is potentially nondischargeable under Chapter 7, and the Bankruptcy Court concluded that, "Chapter 13 may not be used as a substitute for Chapter 7 when the principal motive is to circumvent exceptions to discharge instead of meaningful payments of debts. To confirm a plan under such a scenario, in this Court's opinion, would make a mockery of Chapter 13." 7 B.R. 39, 40-41 (Bankr. S.D. Tex. 1980); *see In re Wilson,* 168 B.R. 260 (Bankr. N.D. Fla. 1994) (where Debtor's sole motivation in filing case was to discharge a claim the creditor asserted was non-dischargeable in Chapter 7, the creditor comprised 70% of the Debtor's unsecured claims, and the Debtor's plan proposed only minimal distribution to unsecured creditors, "the plan was not proposed in a sincere effort to repay debts over a reasonable time, but rather, was proposed as a vehicle to evade the burden of paying [creditor] the full amount to which she is entitled."); *In re Meltzer,* 11 B.R. 624, 628 (Bankr. E.D.N.Y. 1981) (the "Chapter 13 plan is not within the spirit and purposes of the Code. Its objective is not the repayment of . . . debts, but their avoidance. What he proposes, in effect, is a disguised Chapter 7, drafted so as to avoid the restrictions and limitations that Congress has imposed on that remedy").

20. In the case of *In re Bush,* the Debtor was charged with embezzling; the Debtor converted his case to Chapter 13 after the creditor obtained a nondischargeable judgment, and the Debtor proposed a plan that would result in less than 1% distribution to unsecured creditors. 120 B.R. 403, 406 (Bankr. E.D. Tex. 1990). The court concluded that:

> While the fact that Debtor is attempting to discharge a debt in Chapter 13, nondischargeable in Chapter 7 is not standing on its own indicative of a lack of good faith, when this factor is viewed in concert with the significant outstanding unsecured debt, the low proposed payments . . . and the minimal duration of the Plan [three years] this Court is unable to find that Debtor's best efforts comply with the good faith standards.

*Id.* at 409.

21.     The facts and circumstances of this bankruptcy case place it squarely within the considerations annunciated in the numerous decisions discussed above. As previously stated, the American General Litigation alleges wrongful conduct on the part of Debtor, in particular, a fraud claim, that would only be discharged in Chapter 13 bankruptcy proceedings as opposed to a Chapter 7 filing. Debtor is attempting to discharge a debt that would otherwise be nondischargeable.

22.     Moreover, Debtor has proposed a plan that would pay American General, whose claim, as listed, comprises more than 47% of the Debtor's unsecured debt, only 1% of its claim. The funds allocated by the Debtor to pay the unsecured creditors are entirely insufficient. Clearly, Debtor filed his case under Chapter 13 when he was not entitled to such relief and without proposing a good faith repayment plan as required by 11 U.S.C. § 1325(a)(3). As numerous courts have recognized in other cases, Debtor's Plan was not proposed in a sincere effort to repay debts over a reasonable time, but rather, was proposed as a vehicle to evade the burden of paying American General. This bad faith purpose is particularly offensive, given that American General's claim arises from fraudulent conduct performed by Debtor as a fiduciary of American General and that Debtor profited personally from abusing his position of trust with American General. Moreover, there is no evidence that Debtor was in arrears on any of his debts prior to filing for bankruptcy protection.

23. Debtor appears to be using the protection offered by the Bankruptcy Code to frustrate and hinder American General and other creditors' exercise of their rights and remedies. Debtor's Plan is a blatant attempt to subvert the goals of reorganization offered by the Bankruptcy Code and should not be tolerated by this Court. Based on an examination of the totality of the facts of this case, it is apparent that this bankruptcy was filed in bad faith and thus warrants dismissal with prejudice as to American General.

## V.   OBJECTION TO CONFIRMATION OF PLAN

A.   Grounds for Objection to Debtor's Plan.

24. The provisions of the Bankruptcy Code were intended by Congress to protect the honest but unfortunate debtor and to afford the debtor a fresh start. However, Bankruptcy Code Section 1307(c) gives the Court the authority to dismiss a case "for cause"; "[l]ack of good faith constitutes "cause" for purposes of § 1307(c)." *See In re Trexler*, 2002 Bankr. Lexis 1818 (Bkrtcy. D.S.C. 2002); *In re Cynthia Hartley*, 187 B.R. 506 (Bkrtcy. D.S.C. 1995); *In re Fonke*, 310 B.R. 809, 815 (Bankr. S.D. Tex. 2004); *see In re Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *In re Aichler*, 182 B.R. 19 (Bankr. S.D. Tex. 1995); *In re Davis*, 93 B.R. 501 (Bankr. S.D. Tex. 1987). The requirement that debtors act in good faith "prevents abuse of the bankruptcy process by debtors whose overriding motive is to merely delay creditors." *In re Coleman*, 1999 U.S. Dist. LEXIS 15635, *5 (N.D. Tex. 1999). This Court may dismiss this case pursuant to 11 U.S.C. § 1307(c) "for cause" based upon numerous factors including facts which evidence the filing of this case in bad faith.

25. Debtors' Plan must be denied confirmation because it fails to comply with the requirements contained in 11 U.S.C. § 1325. Bankruptcy Code Section 1325 includes, in part, the following requirements that must be met prior to approval of a plan:

(a)(3) the plan has been proposed in good faith and not by any means forbidden by law;

(a)(6) the debtor will be able to make all payments under the plan and comply with the plan;

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-

(b)(1)(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claims; or

(b)(1)(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

B.  Lack of Clarity and Completeness of the Plan

26. The Schedules and Summary are unclear as to ownership or liability on Debtor's residence. Schedule A states that Debtor owns half an interest in the property located at 655 Plum Branch Road, Edgefield, South Carolina. The Schedule further states that the divorce decree awarded the house to his former spouse but Debtor does not believe the deed was recorded. The Plan notes that the debt on the home to be paid to Countrywide is to be paid directly from a codebtor, Debtor's ex-spouse. Thus, it is unclear whether Debtor still owns the property or whether his ex-spouse owns the property and has paid off the debt in-part or in-full. Furthermore, it appears that Debtor claims the full value of the mortgage liability as a secured debt, when he in fact owns a half-interest, in an apparent attempt to trump up his liabilities.

27. Debtor has also filed the Plan as Anthony Mercier, Sr. d/b/a Mercier Insurance. However, Mercier Insurance Agency, Inc. is an entirely separate legal entity. Debtor has failed to assert how he, as an individual, is filing for bankruptcy on behalf of Mercier Insurance. Moreover, the Schedules and Statement of Financial Affairs only discuss the assets and liabilities of the Debtor as an individual, not those of Mercier Insurance. It is important to note that Debtor

is paying business expenses out of his personal income, indicating that he is not treating the business as a separate legal entity. Further, despite Debtor's failure to include property or assets of the business in the Plan, he clearly includes expenditures relating to the business, listing $5300 in business expenditures under Schedule J reserved for personal expenses.

B.  Debtor Has Not Shown That The Plan Is Feasible

28.  The Plan proposes an excess of $702.00 will be available per month to pay creditors; however, $10,000.00 of the monthly income the Plan proposes to use to pay creditors is supposedly earned by the Debtor from the operation of his business, Mercier Insurance Agency, Inc. Debtor has not provided any evidence that the operation of his business will provide a future regular income. As the Debtor is currently defending claims by two insurance companies relating to his wrongful conduct, Debtor's assertion that he will have $10,000.00 in regular income per month via Mercier Insurance over the next 4.75 years is speculative at best. To be eligible for Chapter 13, a debtor must have income that is "to a substantial degree reliable and certain in amount and sufficient to fund payments for the term of a plan. It should be reasonably predictable and dependable." *In re Hickman*, 104 B.R. 374, 376 (Bankr. D. Colo. 1989).

29.  Moreover, there is a discrepancy between the annual revenue listed for the past three years and the Debtor's expected annual income. Debtor's Statement of Financial Affairs states that he earned $70,000.00 in 2003, $85,000.00 in 2004 and $70,000.00 in 2005. With an estimated monthly income of $10,000.00, Debtor assumes a future annual income of $120,000.00, or $50,000.00 more than what was earned in 2005 and 2003. Debtor's Statement of Financial Affairs does not substantiate a future monthly income of $10,000.00 per month. As such, this income has not been shown to constitute regular future income and is insufficient to fund the Plan as proposed.

- 14 -

C.    <u>The Plan Does Not Provide for Payment of Projected Disposable Income</u>

30.    Pursuant to 11 U.S.C. § 1325(b)(1), because the Plan does not provide for full payment of American General's claim, the Plan must provide that all of Debtor's disposable income to be received in a 3 year period be applied to make payments under the Plan for unsecured creditors. The Plan does not meet this requirement because Debtor has made no efforts to economize, and could vastly reduce his budgeted expenses to provide additional disposable income under the Plan without being deprived of the basic necessities. Debtor has failed to show that the expenses listed on Schedule J are "reasonably necessary" for the support of Debtor, and the operation of his business, as required by 11 U.S.C. § 1325(b)(1)(A) and (B). Furthermore, Debtor has not facially made a showing that all of his disposable income is being used for unsecured creditors. Schedule J states that Debtor has $702.00 in disposable income but the Plan proposes to only make payments of $605.00 per month.

31.    The Bankruptcy Court for the Southern District of Texas in the case of *In re Aichler* noted the excesses of a debtor in Chapter 13 to include the fact that the debtor drove a BMW and his monthly budget for "home mortgage payment is $1,326.00, for food is $400.00, for electricity is $300.00, for cable television is $45.00. The court [took] judicial notice that an ordinary loaf of sliced bread costs approximately $1.00 in this community." 182 B.R. 19, 22 (Bankr. S.D.Tex. 1995). The court further found that the debtor's "testimony did not indicate any serious efforts to economize, and the court found not credible his testimony as to why the recreational travel and driving the BMW were economical." *Id.*; *see In re Faulhaber*, 243 B.R. 281, 284-87 (E.D. Tex. 1999) (court considered "whether the debtor's expenses could be reduced without depriving him of food, clothing, shelter and other necessities" and determined that the debtors "have attempted to discharge their debts while maintaining a far more lavish lifestyle

than most citizens of our area . . . That does not constitute the honest but unfortunate debtor entitled to the fresh start.").

32. In addition, Debtor's Schedules reveal a luxurious lifestyle. Debtor apparently earns $10,000.00 a month in regular income, while spending $500.00 per month on electricity, $600.00 per month on food, $300.00 per month on clothing, $80.00 per month on dry cleaning and laundry, $350.00 per month on home maintenance and $75.00 per month on recreation and entertainment. Additionally, Debtor has not explained what he plans to do with the mobile home, with an $8500.00 liquidation value, or his extra vehicle, with a $3000.00 liquidation value, listed on Schedule B. Furthermore, Debtor lists an expenditure of $1800.00 a month in business travel expenses in addition to $300.00 per month for transportation. It should be noted that Debtor has not listed any assets of his business in the various Schedules but lists $5300.00 in monthly business expenses.

33. Debtor has made no serious efforts to economize to avoid filing bankruptcy. Instead, Debtor has sought bankruptcy protection as an easy solution to avoid his liability to American General and other creditors, while leaving his luxurious lifestyle unchanged. Rather than economize, Debtor's budget of personal expenditures, summarized in paragraph 10 above, exceeds that proposed in *In re Aichler*. Debtor is living a lifestyle much more lavish that most citizens of the South Carolina area, and significant reductions could be made to his budget of expenditures to create additional disposable income for distribution to creditors.

D. Debtor Fails to Meet the Best Interests of Creditors Test

34. Under the "best interests" test, a Chapter 13 plan must provide unsecured creditors with no less value than they would receive if the debtor liquidated under Chapter 7. *See In re Solomon*, 67 F.3d at 1137; *see also* 11 U.S.C. § 1325(a)(4). Based on the lack of clarity

and incompleteness of Debtor's Plan, it is unclear whether the liquid value of debtor's estate would yield a greater return to unsecured creditors than that stated in Debtor's Plan; thus, the Plan fails to meet the best interests of creditors test.

E.  Debtor Improperly Listed an Exemption

35. On Schedule C, Debtor improperly lists an exemption covering "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." Specifically, relying on S.C. Code Ann. § 15-41-30, Debtor asserts that any cause of action against insurance companies for termination of policies is a proper exemption. However, contrary to Debtor's assertion, the aforementioned "property" does not fit within any provision of this statute, including the provision exempting:

> (11)(B) a payment on account of the bodily injury of the debtor or of the wrongful death or bodily injury of another individual of whom the debtor was or is a dependent;
>
> (c) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of the individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

*See* S.C. Code Ann. § 15-41-30. Therefore, American General objects to the improper inclusion of "cause[s] of action against insurance companies for termination of policies" as a personal property exemption.

## VI.    CONCLUSION

36. An examination of the totality of the facts of this case evidences that Debtor's Plan has been proposed in bad faith and fails to meet the requirements of the Bankruptcy Code, including the requirements that the Plan provide more to creditors than would be provided under a chapter 7 case, that the Debtor demonstrate how he can fund and comply with the Plan, and that all disposable income be used for satisfaction of creditor claims. Therefore, American

General Life Insurance Company requests that this Court dismiss this case, with prejudice, or, in the alternative, deny confirmation of Debtor's Plan, grant American General Life Insurance Company its attorneys' fees and costs in this action, and grant such other and further relief as it deems just and appropriate.

Respectfully Submitted November 23, 2005

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P

By: _____/s/ Betsy Johnson Burn_____
Betsy Johnson Burn
ID No. 7574
Post Office Box 11070 (29211)
Columbia, SC 29201
(803) 799-2000

OF COUNSEL:

David McDowell
Texas State Bar No. 00791222

Amy Boyea
Texas State Bar No. 24026910

Stephanie Rosenberg
Texas State Bar No. 24033019

BRACEWELL & GIULIANI LLP
South Tower Pennzoil Place
711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 (Telephone)
(713) 221-1212 (Telecopier)

**ATTORNEYS FOR AMERICAN
GENERAL LIFE INSURANCE COMPANY**